Please Note: We have sua sponte removed this case from the accelerated calendar.
 OPINION.
Appellant Harold Richardson entered the Court Reporter's Office in the Hamilton County Courthouse through the unlocked front door at approximately 8:00 A.M. (The door had been unlockedby employees coming into work and no one disputes that the office was open to the public.) He public. Richardson entered the receptionist's desk area, which was set off by a four-foot-tall partition, kneeled under her desk, removed her purse, and rifled through it. The receptionist and another employee observed him.The receptionist confronted him. When Richardson tried to leave, several employees detained him and he was arrested.
The state charged Richardson Richardson was charged with escape, burglary, and an accompanying repeat-violent-offender specification. The trial court dismissed the escape count. A jury found him guilty of burglary and the state "withdrew" the specification. The trial court sentenced Richardson to six years' incarceration.
In his appeal, Richardson's counsel raises seven assignments of error. The first two assignments raise sentencing errors. Richardson's third assignment contends that the trial court erred by failing to put on an entry dismissing the specification. The fourth contends that the trial court erred by failing toprovideinstruct the jurywith aninstruction on criminal trespass, a lesser-included offense of burglary. The fifth raises sufficiency-of-the-evidence issues pertaining to Richardson's conviction and the overruling of his Crim.R. 29 motion. The sixth claims that Richardson's conviction was against the weight of the evidence. In his seventh assignment, Richardson pro se claims that he was prejudiced by certain improprieties.
Because we sustain Richardson's fourth assignment and conclude that this case must be remanded for a new trial, we need not address Richardson's fifth and sixth assignments.[1]
Further, our disposition either addresses or renders moot all but two of the issues raised in Richardson's seventh assignment.
 Appointment of Counsel
We begin our review with Richardson's seventh assignment. Richardson argues that he should have been appointed counsel before he was indicted in order to challenge the composition of the grand jury. He relies on Reece v. Georgia[2] to support his argument that the timing of his counsel's appointment deprived him of effective assistance in violation of due process. InReece, the defendant's opportunity to raise an objection to the composition of the grand jury was limited to the period prior to the return of the indictment. In contrast, under Crim.R. 6(B)(2), Richardson could have challenged the composition of the grand jury after he was indicted by filing a motion to dismiss the indictment. Crim.R. 12(C) allows thirty-five days after arraignment or seven days before trial, whichever is earlier, to file such a motion. The record indicates that Richardson was represented at least at the time of his arraignment (and perhaps sooner — the record of proceedings before his indictment, specifically, his arraignment in municipal court, was not transmitted to us). Richardson was represented by counsel within the period that the composition of the grand jury could have been challenged. We find no merit in Richardson's claimed error.
error. Richardson Richardson also claims that members of his race were systematically excluded from the grand jury that issued his indictment. There is no evidence in the record to support this claim.
 Sentencing Issues
Richardson contends in his first assignment that the trial court failed to consider the factors set out in R.C. 2929.12, and to make felony-sentencing findings required by R.C. 2929.13 and2929.14(B). In his second assignment, Richardson argues that the trial court erred by failing to provide the notification of potential "bad time" and "post-control release" required by R.C.2929.19(B)(3). Though our disposition of this appeal renders moot any sentencing issues, we feel constrained to comment that we would have had to remand for resentencing had we overruled all other assignments of error. There is just no indication that the trial court satisfied the mandates of Senate Bill 2. There is no worksheet, and no presentence report, nor is there any evidence in the record that the court considered the necessary factors or made any findings with regard to the appropriate sentence. While all of the foregoing are not required, this court simply needs something more in the record to fulfill the requirements of Senate Bill 2.
In this case, the record demonstrates that the trial court failed to comply with the sentencing statutes. While we acknowledge the state's attempt to create compliance after the fact by asking the trial court two questions as to what it had considered, we do not believe the trial court's affirmative responses to those questions after the trial court had stated Richardson's sentence on the record was sufficient compliance with the sentencing statutes. Thus, we would have vacated Richardson's sentence and remanded this case to the trial court for resentencing had we not reversed otherwise.
 Dismissal of Specification
In his third assignment, Richardson claims that the trial court erred by failing to enter a dismissal of the repeat-violent-offender specification contained in the indictment. The record demonstrates that the state provided no evidence on the specification and stated that it was withdrawing the specification. There was no entry journalizing this withdrawal. We conclude that, in order to provide a clear record, the dismissal of the specification must be journalized.[3] Though the issue is one of "housekeeping" only, we believe an entry is necessary to clean up the record. We sustain Richardson's third assignment and instruct that, upon remand, the appropriate order be entered.
 IV. Jury InstructionKLesser-Included Offenses
In his fourth assignment, Richardson contends that the trial court erred by failing to provide the jury with an instruction on criminal trespass, a lesser-included offense of burglary. We agree.
The record demonstrates that a request for the instruction was properly made to the trial court. An instruction on a lesser-included offense is required if the offense on which the instruction is requested is a lesser-included offense of the charged offense and the evidence supports an instruction on the lesser-included offense.[4] This court has determined that criminal trespass as defined in R.C. 2911.21 is a lesser-included offense of burglary,[5] This is because criminal trespass meets the definitional prongs of a lesser-included offense set forth in State v.Deem.[6] offense.[5] In State v. Deem[6] the Ohio Supreme Court explained that a lesser-included offense requires the following: (1) the lesser offense must carry a lesser penalty than the greater offense; (2) the greater offense cannot be committed without committing the lesser offense, as both are statutorily defined; and (3) the greater offense must require proof of an element not required by the lesser offense.[7] Criminal trespass is only a misdemeanor offense, while burglary is a felony; a burglary cannot be committed without the commission of a trespass; and burglary requires proof of elements not required to prove criminal trespass. Thus, the Deem
definitional requirements are met.
In determining whether a jury instruction on criminal trespass was warranted in this case, we next must determine whether the evidence adduced at trial would have supported such a charge.[8] "A charge on the lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense."[9] In making this determination, we must view the evidence in a light most favorable to Richardson.[10]
The offense of burglary as charged in this case required proof that Richardson by force, stealth, or deception, and with the intent to commit any criminal offense, trespassed in (entered without privilege to do so) an occupied structure or a separately secured or separately occupied portion of an occupied structure when another was present.[11] The elements of criminal trespass applicable to the evidence in this case required proof that Richardson, without privilege to do so, knowingly entered the premises of another, the use of which was lawfully restricted to certain purposes, when he knew that he was in violation of the restriction or was reckless in that regard, or that he recklessly entered another's premises where notice against unauthorized access was provided.[12] Such notice against unauthorized access could have been by actual communication or by some fencing or enclosure designed to restrict access.[13]
Both Richardson's and the state's arguments on whether a lesser-included-offense instruction should have been providedfocuses given focus on the manner in which Richardson closed the door to the Court Reporter's Office.court reporter's office. The state argues that the receptionist's failure to hear the door "click" from the back of the office was circumstantial evidence that Richardson closed the door slowly in order to keep the door from making a sound. It reasons that this evidence sufficiently proved the stealth element of burglary so as to negate an acquittal on the charge.
The evidence demonstrates that Richardson entered the unlocked front door of the Court Reporter's Officeoffice after it had been unlocked for public use and that he stepped inside. We conclude that the unlocked door, during business hours, extended a tacit invitation to the public, including Richardson, to enter the office. Obviously, amember of the public is invited to enter thepublic areas of an office or business so long as the office orbusiness is open, unless expressly excluded. "As a general rule, a person has the right to enter and be upon the public areas of public property.[14] This invitation, thus, bestowed on Richardson the privilege property."[14] Thus, Richardson was privileged to enter the office. Burglary requires that an offender commit trespass, and trespass requires that one enter the premises of another without privilege to do so.[15] Thus, because Richardson's burglary conviction could not be justified by his mere opening of the door and entry into the Court Reporter'sOfficeoffice itself, how he opened or closed the door wasirrelevant. irrelevant and could not, as a matter of law, satisfy the "stealth" element.
This conclusion, however, does not end our analysis. We must further evaluate the legal significance of the evidence as it pertains to Richardson's intrusion into the receptionist's work area. First, we must address generally whether a work area can be burglarized: in other words, whether a partitioned work area can constitute a "separately secured" or "separately occupied" portion of an occupied structure as contemplated by R.C. 2911.12, and whether it can constitute a "premises" under R.C. 2911.21. An "occupied structure" was previously defined by the legislature, in pertinent part, as a building or portion thereof in which any person was likely to be present.[16] The current version of the statute has deleted the definition. "Separately secured" has not been defined by the legislature, nor has it been sufficiently defined to our satisfaction by Ohio case law. "Premises," as used in the criminal-trespass statute, has been defined, in part, as "any separate enclosure or room."
Traditionally, a secured portion of a structure has meant "one free from unwanted intrusion by reason of a seal or obstruction."[17] In today's society, many employees are required in the name of "space efficiency" to forego the concept of privacy found in a traditional office design of four walls, a ceiling, and a door, and are expected to toil in work areas set off by sundry barriers, including tape on floors, partitions, and counters. This "Dilbertizing" of the work area mandates that we define a "separately secured" or "separately occupied" portion of a structure, as well as a "separate enclosure," in a more practical manner, at least as the terms apply to an office environment. We find instructive the reasoning of a California appellate court in its determination whether an area set off by a counter constituted a "room."
 As the burglary statute is designed to protect against unauthorized entry and its attendant dangers, the ultimate test of whether a burglarious entry has occurred must focus on the protection the owners or inhabitants of a structure reasonably expect. The proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions * * *. [E]ven an open door or window affords some expectation of protection from unauthorized intrusion because reasonable persons understand the social convention that portals may not be crossed without permission from the structure's owner.
 People v. Nible (1988), 200 Cal.App.3d 838, 844, 247 Cal.Rptr. 396.
 In today's world, counters are frequently used to designate the boundary between public and private spaces * * *. Employees who work behind counters have a reasonable expectation that the public will not enter there, and members of the public know they may not go behind counters without permission. Here, the waist-high counter with gate reasonably communicated to all that nonemployees could not enter the office area without authorization.[18]
We believe that the court's recognition that people who work in areas set off by partitions or counters perceive these as barriers against and protection from free accessibility supports our conclusion that such barriers may also constitute "separate enclosures," or "separately secured" or separatelyoccupied"separately occupied" portions of an occupied building.[19] Employees and the general public recognize and accept such barriers in the same way that they acknowledge separate rooms in a building. Therefore, the burglary statute applies to work cubicles.
In this case, the receptionist's work area was separated from the front entrance by a four-foot-high partition. The receptionist described her work area as a cubicle. She testified
testified that she did not view the area as a public area and that the public usually stopped outside the partition. She stated that there were no doors or gates to her desk area. (Although therewas apparentlythe witnesses testified from a diagram of the CourtReporter's Office, from which the witnesses testified,court reporter's office, that diagram is not in the record, and we admit that the testimony describing the area is somewhat unclear.) Under these facts, the jury could have reasonably found that the work area constituted a separately secured or occupied portion of an occupied building, as well as a separate enclosure.
An essential element of burglary, and one that distinguishes that crime from criminal trespass in this case, is the element of stealth. The trial court correctly defined "stealth" as "any secret, sly, or clandestine act to gain entrance."[20] The evidence demonstrates that Richardson was found shortly after 8:00 A.M., within the receptionist's work area without her permission, with his head under her desk, retrieving her purse. Under these facts, construing the evidence most favorably toward Richardson, we conclude that a jury could have reasonably found that Richardson had entered the receptionist's work area without privilege to do so, but that his entrance was not by stealth. (Of course, a reasonable jury might have also found that the entrance to the cubicle was stealthy.) Thus, we hold that the trial court erred in failing to give an instruction on the lesser-included offense of criminal trespass. We sustain Richardson's fourth assignment.
Our holding does not preclude Richardson (or the state) from requesting instructions on any other appropriate lesser-included offenses, or from seeking other special instructions, if the evidence presented at a new trial warrants that such issues be addressed. In sum, weWe reverse Richardson's conviction and remand this case for a new trial with the additional instructionto the trial court to place an trial.
entry of record dismissing the repeated-violent-offenderspecification.
 Judgment reversed and cause remanded.
Sundermann and Shannon, J.J., concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court has recorded its own entry on the date of the release of this Opinion.
[1] See App.R. 12(A).
[2] Reece v. Georgia (1955), 350 U.S. 85, 76 S.Ct. 167
[3] Cf. State v. Pace (June 5, 1998), Hamilton App. No. C-970546, unreported (no indication during the plea hearing or in the journal as to the disposition of a sexually-violent-predator specification constitutes only a partial determination of the case).
[4] See State v. Thomas (1988), 40 Ohio St.3d 213,533 N.E.2d 286; State v. Menser (Sept. 25, 1998), Hamilton App. No. C-970562, unreported.
[5] See State v. Chambers (March 20, 1996), Hamilton App. No.C-950357, unreported; fn. 2.
[6] State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294,paragraph three of the syllabus.
[5] See State v. Chambers (Mar. 20, 1996), Hamilton App. No. C-950357, unreported, fn. 2.
[6] State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus.
[7] Id.
[8] See State v. Thomas, supra, at 216, 533 N.E.2d at 289.
[9] State v. Menser, supra, citing State v. Thomas, supra, at paragraph two of the syllabus.
[10] State v. Wilkins (1980), 64 Ohio St.2d 382, 388,415 N.E.2d 303, 308; State v. Menser, supra.
[11] R.C. 2911.12(A)(1).
[12] See R.C. 2911.21(A)(2) and (3).
[13] R.C. 2911.21(A)(3).
[14] State v. Shelton (1989), 63 Ohio App.3d 137, 139-140,578 N.E.2d 473, 474.
[14] State v. Shelton (1989), 63 Ohio App.3d 137, 139-140,578 N.E.2d 473, 474.
[15] See State v. Barksdale (1983), 2 Ohio St.3d 126,443 N.E.2d 501; State v. Long (Apr. 27, 1983), Hamilton App. No. C-820535, unreported.
[16] Former R.C. 2909.01(C).
[17] State v. Mathews (Apr. 19, 1984), Cuyahoga App. No. 47427, unreported.
[18] People v. Mackabee (1989), 214 Cal.App.3d 1250, 1257-1258,263 Cal.Rptr. 183, 186.
[19] Accord State v. Harvey (Jan. 2, 1985), Hamilton App. No. C-840272, unreported; State v. Ferguson (1991), 71 Ohio App.3d 342,594 N.E.2d 23(fenced-in portion of a store is a structure).
[20] See State v. Clement (Dec. 30, 1988), Franklin App. No. 87AP-900, unreported.